SM

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Robert Beede, | No. CV-21-02087-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Pinal County Sheriff Facility, et al., | |
| Defendants. | |

Plaintiff Jonathan Robert Beede, who is currently confined in the Arizona State Prison Complex (ASPC)-Yuma, La Paz Unit in San Luis, Arizona, brought this pro se civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 19.) Defendants move for summary judgment (Doc. 102), and Plaintiff did not respond.[1]

The Court will grant the Motion for Summary Judgment and terminate the action.

**I.  Background**

Plaintiff names the following Defendants in his two-count Third Amended Complaint: Wexford Health Services ("Wexford"), Nurse Kelly, Pinal County, and Officer Valdez. (Doc. 19 at 2.) Plaintiff seeks money damages. (*Id.* at 8.)

In Count One, Plaintiff alleges violations of his Fourteenth Amendment right to medical care. (*Id.* at 3−5.) Plaintiff claims that on March 31, 2021, he was booked into the Pinal County Jail. (*Id.* at 3.) During intake, Plaintiff informed medical staff that he

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 104.)

had a painful pus-filled lump on his penis. (*Id.*) Plaintiff alleges medical staff refused to do anything about it and that, "per policy they [didn't] have to treat [him] because [he was] in intake." (*Id.*) The lump ruptured, and Plaintiff began to experience chills, cold sweats, swelling, and difficulty urinating. (*Id.*) Plaintiff claims he informed numerous medical staff, but they continued to refuse to do anything. (*Id.*) After leaving intake, Plaintiff submitted numerous medical requests, was seen by a doctor, and was then sent to the hospital for emergency surgery. (*Id.*) The surgeon told Plaintiff, "he couldn't believe they let it get so bad and that surgery wouldn't have been necessary if they had treated it when it was just a lump." (*Id.* at 3–4.) After returning to the jail, Plaintiff received wound care for 30 days and was given ibuprofen for two weeks. (*Id.* at 4.) Plaintiff was denied any further pain relief even though he constantly complained of pain. (*Id.*) Plaintiff claims he continues to experience problems, including pain. (*Id.*)

Plaintiff alleges Defendant Wexford "has the policy, custom or accepted practice of not treating intake inmates' medical issues" and of "not prescribing adequate pain medication." (*Id.* at 4–5.)) Plaintiff asserts Defendant Kelly was "shown [Plaintiff's] injury before it ruptured and after it ruptured, but she refused to treat [him]." (*Id.* at 5.) Plaintiff contends Defendant Kelly was aware of his injury and aware of his pain, "but made the conscious decision not to treat the injury or the pain [Plaintiff] was in," resulting in Plaintiff's suffering. (*Id.*)

In Count Two, Plaintiff alleges Defendant Valdez retaliated against him in violation of the First Amendment. (*Id.* at 6.) According to Plaintiff, all requests for legal forms or assistance go through Defendant Valdez. (*Id.*) Plaintiff submitted numerous requests to Defendant Valdez for § 1983 civil rights complaint forms, but Valdez told him she "would not help [Plaintiff] sue them and accused [Plaintiff] of lying and trying to pull a scam." (*Id.*) When Plaintiff asked for grievance forms, Valdez told him, "no one would give [him] one because [he] was trying to sue them and that while she worked there, if [Plaintiff] somehow managed to submit a grievance or had any forms sent in, she would make sure [he] went to confinement for the rest of [his] stay." (*Id.*) If Plaintiff asked other officers

for forms, they were told not to give them to him. (*Id.*) Plaintiff also claims his incoming legal mail was intercepted and kept from him in retaliation for his efforts to file a lawsuit and that this continued for more than eight months. (*Id.*) Plaintiff alleges Defendant Valdez's action did not serve a legitimate penological purpose and chilled Plaintiff's exercise of his First Amendment rights. (*Id.* at 7.)

Finally, Plaintiff claims that Defendant Pinal County "has the policy, custom or accepted practice of allowing their officers at the Pinal County Jail to conduct retaliation and take adverse actions that serve no penological interest." (*Id.*)

On screening Plaintiff's First Amended Complaint (Doc. 19) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourteenth Amendment medical care claim against Defendants Wexford and Kelly and a First Amendment retaliation claim against Defendants Valdez and Pinal County. (Doc. 20 at 4.) The Court directed Defendants to answer the respective claims against them. (*Id.*)

Thereafter, Nurse Dawn Tuttle was substituted for Defendant Kelly, and Defendant Kelly was dismissed from the action. (Doc. 84.) Defendants Pinal County and Valdez and Plaintiff's claim in Count Two were dismissed from the action in a subsequent Order. (Doc. 101.)

Defendants Tuttle and Wexford now move for summary judgment as to Plaintiff's Fourteenth Amendment medical care claim in Count Two. (Doc. 102.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,

1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.    Relevant Facts[2]

On March 31, 2021, Plaintiff was booked into Pinal County Jail. (Doc. 106 at 1, Defs.' Redacted Statement of Facts (DSOF) ¶ 1; Doc. 19 at 3.) Defendant Registered Nurse (RN) Tuttle performed Plaintiff's intake screening at approximately 1:19 p.m. (Doc. 106 at 1, DSOF ¶ 1.) Defendant Tuttle's notes from the intake do not show that Plaintiff reported any penile abscess or other penile problems to her. (Doc. 106 at 10–16, Defs.' Ex. A.) Plaintiff states that he "informed numerous medical staff about" a "pus-filled lump on [his] penis[,]" but "medical staff refused to do anything about it." (Doc. 19 at 3.)

---

[2] Because Plaintiff did not file a response or controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified First Amended Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Someone told Plaintiff "that, per policy, they don't have to treat [him] because [he] was in intake." (*Id.*)

Later that night, at approximately 11:26 p.m., a health care request was entered for Plaintiff for reports of "pain in genitals that started as a pimple and is getting bigger" and that it "hurts to lay down and walk." (Doc. 106 at 1–2, DSOF ¶ 2.) RN Wendi Hatman referred Plaintiff to the doctor line. (*Id.*)

On April 2, 2021, Plaintiff was seen by RN Hatman for his complaints of penile pain and swelling. (Doc. 106 at 2, DSOF ¶ 3; Doc. 106 at 20–21, Defs.' Ex. C.) RN Hatman noted that Plaintiff's penis was "very swollen, more than double normal size of girth, dark pink in color, white pustule wound on middle of [left] side of shaft" and that the "[w]ound [was] not currently draining." (*Id.*) A urine sample was taken, and a urine dip was performed; Plaintiff's urine was "yellow and slightly cloudy in color with an unpleasant odor to it." (Doc. 106 at 21, Defs.' Ex. C.) These findings were immediately reported to the provider, who ordered that Plaintiff be sent to the emergency room for evaluation and treatment. (Doc. 106 at 2, DSOF ¶ 3; Doc. 106 at 21, Defs.' Ex. C.)

On April 3, 2021, at around 12:00 a.m., Plaintiff was evaluated at Florence Hospital. (Doc. 106 at 2, DSOF ¶ 4; Doc. 106 at 23–24, Defs.' Ex. D.) Plaintiff reported that he had a "pimple on his penis th[at] popped about a week ago" and that he had experienced "increasing swelling[,] redness and pain around the penile area." (*Id.*) Plaintiff was started on antibiotics and evaluated by the ER physicians who noted that Plaintiff's urethra was "patent," indicating no obstruction to urinary flow. (*Id.*) The physicians at Florence Hospital decided to transfer Plaintiff to Mountain Vista Medical Center for an urgent urologic consult. (*Id.*)

In the early morning hours of April 3, 2021, Plaintiff arrived at Mountain Vista Medical Center for a urological consult. (Doc. 106 at 2, DSOF ¶ 4; Doc. 106 at 28–29, 32, Defs.' Ex. E.) Plaintiff reported to staff at Mountain Vista that drainage and pus began about a week prior. (*Id.*) After consultation with the urologist, Plaintiff underwent an incision and drainage procedure. (*Id.*) He was kept overnight for pain management and

observation. (*Id.*) On April 4, 2021, Plaintiff was discharged with instructions that included wet-to-dry wound care, oral antibiotics (Doxycycline and Keflex), and pain management consisting of Tylenol and ibuprofen. (*Id.*)

On April 4, 2021, Plaintiff was returned to Pinal County Jail. (Doc. 106 at 3−4, DSOF ¶ 6; Doc. 106 at 52−54, Defs.' Ex. F.) Plaintiff was assessed at that time, and orders were entered for antibiotics, wet-to-dry wound care three times per day, and medical watch. (*Id.*) Plaintiff reported pain of 5/10 in the surgical area, and he complained of "a pinching feeling when urinated," but "denie[d] burning or foul smell." (Doc. 106 at 52, Defs.' Ex. F.) Plaintiff reported that his wound was packed and covered with gauze at that time, but his wound was not visually inspected at that time. (*Id.*)

On April 6, 2021, Plaintiff was seen and evaluated by Nurse Practitioner (NP) Kristie Newton. (Doc. 106 at 3, DSOF ¶ 7; Doc. 106 at 56–57, Defs.' Ex. G.) Plaintiff reported that he was not having trouble urinating and his swelling was getting better. (*Id.*) NP Newton removed the packing from Plaintiff's wound, flushed the wound with sterile saline, repacked it with iodoform, and wrapped it with cling wrap. NP Newton noted "minimal drainage" and ordered continued dressing changes. (Doc. 106 at 57, Defs.' Ex. G.)

Between April 4 and 30, 2021, Plaintiff received regularly scheduled wound care. (Doc. 106 at 3, DSOF ¶ 8; Doc. 106 at 20, 59–75, Defs.' Ex. H.) Defendant Tuttle provided wound care on April 15, 23, 28 and 29 (Doc. 106 at 60–61, 63, 67, 76–79, 93–94, 123–24, Defs. Ex. H.) Plaintiff also had a prescription for ibuprofen, which he received upon request. (Doc. 106 at 3, DSOF ¶ 8.) Medication administration records show that Plaintiff regularly received oral antibiotics and ibuprofen throughout May and April 2021; the records show that he was given Tylenol nearly every day in June 2021. (Doc. 106 at 202–204, Defs.' Ex. I.)

By April 30, 2021, Plaintiff's wound no longer needed daily wound care, which was discontinued. (Doc. 106 at 3, DSOF ¶ 9.) Plaintiff's wound was almost completely healed and left open to air, and Plaintiff received wound care as needed after that. (*Id.*)

On June 28, 2021, Plaintiff submitted a health care request to speak with a urologist. (Doc. 106 at 3, DSOF ¶ 10.) Plaintiff did not express any specific concerns regarding his penile wound and/or any genitourinary complaints. (*Id.*) He was reminded that the urologist did not require a follow-up and was told to report any specific symptoms, and he would see a provider. (*Id.*)

On December 12, 2021, Plaintiff was transferred to the Arizona Department of Corrections. (Doc. 106 at 4, DSOF ¶ 12.) A medical intake was conducted with no mention of any genitourinary issues. (*Id.*)

On February 22, 2022, Plaintiff was seen and evaluated by the doctor for "chronic penis pain." (*Id.* ¶ 13.) Plaintiff reported painful erection and dysuria. (*Id.*) The doctor made a urology referral. (*Id.*)

On June 2, 2022, Plaintiff was evaluated offsite by a urologist who recommended a cystoscopy to evaluate for urethral abnormalities and strictures. (*Id.* ¶ 14.) On August 29, 2022, Plaintiff underwent the cystoscopy, and no stricture or narrowing was found. (*Id.* ¶ 15.) Plaintiff was prescribed Pyridium, which is used to treat urinary tract infections and other urinary problems. (*Id.*)

During his deposition, Plaintiff testified that he was given ibuprofen during his wound dressing changes in April. (Doc. 106 at 239, Pl. Dep. at 20:16–18.) Plaintiff also testified that his wound was "fully healed" around late April 2021. (*Id.* at 240, Pl. Dep. 21:24–25.)

**IV.    Discussion**

    **A.    Fourteenth Amendment Standard**[3]

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference

---

[3] In the Motion for Summary Judgment, Defendants referred to the Eighth Amendment subjective deliberate indifference standard for analyzing medical claims instead of the Fourteenth Amendment objective deliberate indifference standard. (*See* Doc. 102 at 7–8.) The Court will analyze the evidence under the appropriate legal standard.

standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). To state a medical care claim, a pretrial detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

### B. Defendant Tuttle

The record shows that Defendant Tuttle's involvement in Plaintiff's medical care consisted of performing Plaintiff's intake screening on March 31, 2021 upon his admission to the Pinal County Jail and providing wound care on April 15, 23, 28 and 29, 2021. Defendant Tuttle's notes from the intake screening did not indicate any complaints of penile issues. Plaintiff vaguely asserts that during his intake screening, he told "medical staff" about "a painful pus-filled lump on his penis," but he does not specify which members of the staff he told and whether Defendant Tuttle was one of them. (Doc. 19 at

3.) Even if Plaintiff told Defendant Tuttle during the March 31, 2021 intake that he had a painful pimple on his penis, and Defendant Tuttle did not investigate Plaintiff's complaint, the evidence does not show that Defendant Tuttle's conduct placed Plaintiff at substantial risk of serious harm. Later that same day, Plaintiff filed a health request regarding genital pain and was referred to the doctor's line. He was promptly evaluated by nursing staff on April 2, 2021 and was admitted to the emergency room by midnight April 3, 2021. The minimal delay between Plaintiff's intake screening and his evaluation by the nursing staff and ultimate admission to the emergency room does not support a Fourteenth Amendment claim. The facts do not show that Defendant Tuttle's conduct placed Plaintiff at a substantial risk of serious harm or that her conduct caused Plaintiff's injuries given the undisputed evidence that Plaintiff was admitted to the emergency room and treated for his penile abscess a little over two days after his initial screening. There is no evidence that the outcome would have been any different if Plaintiff had been sent to the emergency room earlier. Construing the facts in Plaintiff's favor, Defendant Tuttle's response during the intake screening may have amounted to negligence, at most, which is insufficient to support a Fourteenth Amendment claim. Accordingly, the Motion for Summary Judgment will be granted as to Plaintiff's claim against Defendant Tuttle.

### C. Wexford

To succeed on a § 1983 claim against Wexford as a private entity performing a traditional public function, Plaintiff must satisfy the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978), by presenting facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012). In this case, Plaintiff must show: (1) that his constitutional rights were violated by an employee or employees of Wexford; (2) that Wexford has customs or policies that amount to deliberate indifference; and (3) that the policies or customs were the moving force behind the violation of Plaintiff's constitutional rights in the sense that Wexford could have prevented the violation with an

appropriate policy. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002).

Here, the record does not support a constitutional deprivation. The undisputed facts show that Plaintiff was booked into Pinal County Jail on the afternoon of March 31, 2021; he reported genital pain later that night and got referred to the doctor's line; he was seen on April 2, 2021 by nursing staff and the provider, who immediately sent him to the emergency room in the pre-dawn hours of April 3, 2021; he was discharged from the hospital the following day with orders for daily wound care, oral antibiotics, and Tylenol/aspirin; from April 4, 2021 until the end of the month, Plaintiff received daily wound care, ibuprofen, Tylenol, and antibiotics; and his wound was completely healed by the end of April 2021. As previously discussed, these facts do establish a constitutional violation, and contrary to Plaintiff's allegations, they do not indicate a policy, practice, or custom of refusing to treat inmates' medical issues and denying pain medication.

Plaintiff has not come forward with evidence to create a genuine issue of material fact that he was placed at a substantial risk of serious harm or that appropriate measures were not taken in treating his penile issues, and he has not presented facts to show that Wexford implemented a policy or custom of denying medical treatment and pain medication. Accordingly, Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED** that the reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 102), and the Motion is **granted**. The Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 15th day of April, 2024.

James A. Teilborg
Senior United States District Judge